ROTEK, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Rotek, Inc. *v.* Limbach (1990), 50 Ohio St. 3d 81.]

(No. 88-1347—Submitted March 6, 1990—Decided April 11, 1990.)

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.*, for appellant.

*Anthony J. Celebrezze, Jr.*, attorney general, and *James C. Sauer*, for appellee.

*Per Curiam.* This appeal presents three issues. First, what is the proper test to determine whether items purchased under the Austin construction contract are excepted from sales tax by reason of R.C. 5739.01(B)? Second, what determines whether the electrical substation is exempt from taxation as an adjunct to manufacturing? Third, what factors control the application of the county permissive tax?

For the reasons which follow, we find that those items which are incorporated into structures are real property and excepted from sales tax; that the electrical substation, to be exempt as an adjunct to manufacturing, must be used at the location where manufacturing occurs, and must reduce the electrical voltage to a voltage utilized by equipment engaged directly in manufacturing a product for sale; and that the location of delivery of purchases under the construction contracts determines the applicability of the county permissive tax.

## I

R.C. 5739.01(B), at the time of the audit period, read as follows:

" 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * * for a consideration * * *. Except as provided in section 5739.03 of the Revised Code, a construction contract, pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property is not a sale of such tangible personal proper-

ty, and the construction contractor is the consumer thereof. * * *"

"Real property" is defined in R.C. 5701.02 as follows:

"As used in Title LVII [57] of the Revised Code, 'real property' and 'land' include land itself * * * and, unless otherwise specified, all buildings, structures, improvements, and fixtures of whatever kind on the land and all rights and privileges belonging or appertaining thereto."

R.C. 5701.03 defines "personal property" to include every tangible thing not forming part of a parcel of real property.

If the items in question constitute real property they are excepted from sales tax; but if they constitute personal property they are subject to tax. The proper test to be applied is in the syllabus of *Shutter Bug* v. *Kosydar* (1974), 40 Ohio St. 2d 99, 69 O.O. 2d 487, 321 N.E. 2d 239:

"Even if a structure or building located on land is personal property, such structure or building will, for purposes of taxation, be included within the definition of 'real property' as that term is defined in R.C. 5701.02, unless the General Assembly has otherwise specified. * * *"

We find no applicable statutory exception.

More recently, in *Green Circle Growers, Inc.* v. *Lorain Cty. Bd. of Revision* (1988), 35 Ohio St. 3d 38, 517 N.E. 2d 899, the property in question was double poly hoop greenhouses which were constructed by stretching plastic sheeting over a frame consisting of metal pipes bolted to other metal pipes which were imbedded into concrete and attached to the ground. The "greenhouses" were capable of being disassembled and stored seasonally. During use, the greenhouses were heated by a series of satellite boilers and piping systems which circulated hot water. These structures con-

stituted "structures" within the contemplation of R.C. 5701.02, and were, therefore, real property exempt from sales tax.

The BTA, having based its decision upon the determination that the property was devoted primarily to the business conducted on the land, did not make a determination as to whether the property in question was incorporated into a structure, thus becoming real property. Accordingly, the decision of the BTA on this issue is reversed and the cause is remanded with instructions to review and redetermine the facts of record and to decide whether the items in question were "structures" and, therefore, real property under R.C. 5701.02 and excepted from sales tax as provided in R.C. 5739.01(B).

II

Next, we examine the issue of tax exemption for the electrical substation under the Hatfield contract and the modifications to the substation under the Electrical Equipment Co. contract.

R.C. 5739.01(E), as pertinent, provided:

" 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:
"* * *
"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, * * * [or] processing * * *."

R.C. 5739.01(S), now referred to as 5739.01(R), read:

" 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue,

production to complete a product at the same location after such transforming or converting has commenced."

The BTA found, and appellant has conceded, that the electrical substation did not supply power directly to the manufacturing machinery and that the voltage had to be reduced before it could be used to operate the equipment.

A review of the foregoing statutes indicates that property, in order to be exempt from taxation, must be used directly in manufacturing or processing. Alternatively, if property is not so used, it can be exempt nevertheless on the basis that it is an adjunct to direct use in manufacturing or processing. There has been no argument presented, nor could there be, that the electrical substation acted directly in transforming or converting tangible personal property into a product for sale.

The syllabus in *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 59 O.O. 2d 178, 283 N.E. 2d 434, provides:

"In order to obtain an exception from the sales tax pursuant to R.C. 5739.01(S), a claimant must show that the thing for which the exception is sought is an 'adjunct,' used in production to complete a product at the same location and after transformation or conversion has commenced, and, pursuant to R.C. 5739.01(E)(2), must also show that the thing is an adjunct to direct use or consumption in production for sale."

*Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, 119, 63 O.O. 2d 195, 199, 296 N.E. 2d 533, 537, identifies the three requirements for exemption based upon adjunctive use: "(1) Used at the same location; (2) used after the transforming or conversion has commenced; and

(3) related to direct use or consumption in production."

Here the electrical substation is at the plant but it is not at the location of the machinery to which it is claimed to be adjunct. The substation provides power to the entire Rotek facility, not merely the manufacturing areas. The substation is not the last transformer; it does not reduce the electrical voltage to the voltage which the machinery can use; and, therefore, it is not used directly in manufacturing. The substation is subject to taxation. *General Motors Corp.* v. *Bowers* (1956), 164 Ohio St. 574, 58 O.O. 435, 132 N.E. 2d 213, paragraph three of the syllabus.

The decision of the BTA on this issue is reasonable and lawful and is hereby affirmed.

III

Finally, the issue of the permissive tax requires an examination of R.C. 5739.021 and 5739.023, which authorize an additional tax on every retail sale made in the respective taxing jurisdiction. The contracts between Rotek and the suppliers provided for delivery of the property under consideration to Rotek's facility being constructed at Aurora in Portage County. The fact that the suppliers maintained offices in Cuyahoga County or the indication that the suppliers agreed to be bound to the contract in Cuyahoga County is of no consequence since it is clear that the contracts were to be performed at the plant in Portage County. It was in Portage County that title and possession of tangible personal property were transferred. See *Arga Co.* v. *Limbach* (1988), 36 Ohio St. 3d 220, 522 N.E. 2d 1074. The permissive tax was not properly assessed. The decision of the BTA to the contrary is unreasonable and unlawful and is hereby reversed.

*Decision affirmed in part, reversed in part, and cause remanded.* MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.