BIRD & SON, INC., APPELLANT, *v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as Bird & Son, Inc. *v.* Limbach (1989), 45 Ohio St. 3d 76.]

(No. 87-2173—Submitted February 7, 1989—Decided August 23, 1989.)

*Bodiker & Holland* and *David H. Bodiker,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Richard C. Farrin,* for appellee.

SWEENEY, J.

I

The instant appeal involves the levy of various sales and use tax assessments upon equipment employed in the manufacturing operation conducted by appellant. Appellant contends that the various items of equipment are exempt from sales and use taxation pursuant to R.C. 5739.01

(E)(2) and 5741.02(C)(2), respectively. R.C. 5739.01(E)(2) defines the types of sales at issue in the case *sub judice.* This section provides in relevant part:

"(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:·

"* * *

"(2) To incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining, *or to use or consume the thing transferred directly in the production of tangible personal property * * *.*" (Emphasis added.)

Similarly, R.C. 5741.02(C)(2) provided during the relevant audit period:

"(C) The [use] tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property, nor to the storage, use, or consumption in this state of tangible personal property purchased under the following described circumstances:

"* * *

"(2) Tangible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code[.]" 135 Ohio Laws, Part II, 519.[2]

The application of R.C. 5739.01 (E)(2) and its predecessors has not been without difficulty. This is due in large part to the variety of manufacturing processes to which the language contained therein has been applied. See *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407, 409, 47 O.O. 313, 314, 105 N.E. 2d 648, 650; *Canton Malleable Iron Co.* v. *Porterfield* (1972), 30 Ohio St. 2d 163, 173, 59 O.O.·

2d 178, 183, 283 N.E. 2d 434, 440; and *Columbus Bituminous Concrete Corp.* v. *Bowers* (1962), 173 Ohio St. 103, 106, 18 O.O. 2d 355, 356-357, 180 N.E. 2d 142, 145.

However, the analysis of its application to the facts of a particular case must begin with the recognition that "* * * every sale or use of tangible personal property in this state is [presumed to be] taxable[,]" *National Tube Co.* v. *Glander, supra,* at 409, 47 O.O. at 314, 105 N.E. 2d at 650, and that exemptions from sales or use taxation "are to be strictly construed, and one claiming exemption must affirmatively establish his right thereto." *Id.; Canton Malleable Iron Co.* v. *Porterfield, supra,* at 166, 59 O.O. 2d at 179, 283 N.E. 2d at 437. R.C. 5739.01(E)(2) is therefore subject to the aforementioned rules of statutory construction. It provides an exemption from taxation for tangible personal property used *directly* in the manufacturing process.

In order to determine whether tangible personal property is employed directly in manufacturing it is essential to ascertain the points at which the manufacturing process begins and ends. *Ohio Ferro-Alloys Corp.* v. *Kosydar* (1973), 34 Ohio St. 2d 113, 115, 63 O.O. 2d 195, 197, 296 N.E. 2d 533, 535. It has been held that manufacturing and processing " '* * * imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed — the actual operation incident to changing them into marketable products. * * *' " *Canton Malleable Iron Co.* v. *Porterfield, supra,* at 170, 59 O.O. 2d at 181-182, 283 N.E. 2d at 439. See, also,

---

[2] Since the analysis of the application of the sales and use tax is virtually identical in this context, we will refer henceforth only to the sales tax provision.

*Ohio Ferro-Alloys Corp.* v. *Kosydar, supra,* at 115, 63 O.O. 2d at 197, 296 N.E. 2d at 535; *National Tube Co.* v. *Glander, supra,* at 410, 47 O.O. at 315, 105 N.E. 2d at 650.

This is clearly the import of the term "manufacturing" as defined in former R.C. 5739.01(S), *infra.*[3] Accordingly, the crucial focus in determining whether an item is used "directly" in manufacturing must be whether the item is employed directly "* * * in the process of transforming or converting tangible personal property into tangible personal property for sale * * *." *Canton Malleable Iron Co.* v. *Porterfield, supra,* at 173, 59 O.O. 2d at 183, 283 N.E. 2d at 440.

Thus, despite the diverse factual contexts to which R.C. 5739.01(E)(2) has been applied, a synthesis of past decisions reveals a nearly uniform analysis. The central inquiry remains as follows: "[w]hen does the manufacturing or processing activity begin and end, and is the property used or consumed during and in the manufacturing or processing period?" *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 367, 5 O.O. 2d 3, 5, 149 N.E. 2d 1, 4. See, also, *Columbus Bituminous Concrete Corp.* v. *Bowers, supra,* at 106, 18 O.O. 2d at 356, 180 N.E. 2d at 145. "* * * The manufacturing process for which a beginning and end must be determined is the one that produces * * * [the] marketable product. * * *" *Interlake, Inc.* v. *Kosydar* (1975), 42 Ohio St. 2d 457, 459, 71 O.O. 2d 436, 437, 330 N.E. 2d 444, 446; *Southwestern Portland Cement Co.* v. *Lindley* (1981), 67 Ohio St. 2d 417, 421, 21 O.O. 3d 261, 264, 424 N.E. 2d 304, 307. Consequently, tangible personal property which is

employed in operations *preliminary* or *preparatory* to production of the marketable product, *Interlake* v. *Kosydar, supra,* at 459, 71 O.O. 2d at 437, 330 N.E. 2d at 446, or employed subsequent to completion of the manufacturing process, *Columbus Bituminous Concrete Corp.* v. *Bowers, supra,* at 105-106, 18 O.O. 2d at 356, 180 N.E. 2d at 144, is not exempt.

However, mere employment of equipment or material during the manufacturing process is not dispositive in determining its exemption from taxation pursuant to R.C. 5739.01(E)(2).

As noted above, *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra,* states clearly that property is exempt from taxation under the foregoing section only when it is "used or consumed during and *in* the manufacturing or processing period[.]" (Emphasis added.) *Id.* at 367, 5 O.O. 2d at 5, 149 N.E. 2d at 4. See, also, *Southwestern Portland Cement Co.* v. *Lindley, supra,* at 421, 21 O.O. 3d at 263, 424 N.E. 2d at 307; *Columbus Bituminous Concrete Corp.* v. *Bowers, supra,* at 106, 18 O.O. 2d at 356, 180 N.E. 2d at 145; *Timken Co.* v. *Kosydar* (1977), 52 Ohio St. 2d 131, 136, 6 O.O. 3d 345, 348, 369 N.E. 2d 1211, 1215. Accordingly, the exemption is dependent upon the direct application of the property to the manufacturing process and not merely its contemporaneous utilization during the fabrication of a marketable product.

Applying the foregoing principles to the facts of the instant case, it is necessary to focus upon the distinct function of each item of tangible personal property subject to assessment and its relationship to the shingle manufacturing process of appellant. It is the contention of appellant that the granule conveyance system (silo, silo foundations and conveyors linking

---

[3] This definition has been expanded and is now found in R.C. 5739.01(R).

them to the machine bins) is exempt from taxation since this equipment, or at least a portion thereof, is applied directly to transform and convert material in its original form (*i.e.,* granules of a distinct color) into a different composition upon the conveyor belt. The fallacy of this argument is that it misapprehends the analysis required to determine the beginning of the manufacturing process. Our prior cases have been consistent in recognizing that the manufacturing process begins at the point at which the various materials are converted into *a marketable product.* See *Interlake, Inc.* v. *Kosydar, supra,* at 459, 71 O.O. 2d at 437, 330 N.E. 2d at 446. The contention of appellant that the manufacturing process begins at the point the granules are blended would have merit if appellant were engaged in the manufacture of blended granules. However, appellant manufactures shingles and it is at the point where the component materials converge to produce this marketable product that the manufacturing process transpires. Consequently, the granule conveyance system was properly assessed by the Tax Commissioner since it is employed " "* * * in operations *preliminary* and *preparatory* to manufacturing or processing * * *.' " (Emphasis *sic.*) *Id.*

Appellant urges, however, that non-exemption of the granule conveyance system is inconsistent with our earlier recognition that the talc application system employed by appellant, and which appellant describes as "analogous," was exempt. See *Logan-Long Co.* v. *Lindley* (Mar. 17, 1980), BTA No. 78-B-152, affirmed (1980), 64 Ohio St. 2d 156, 18 O.O. 3d 378, 413 N.E. 2d 836. The crucial distinction between the talc application system and the granule conveyance system is that the former process applies talc directly to the shingle product subsequent to the commencement of the manufacturing process. In contrast, the latter equipment is employed to store and then transport the granules to the machine bins for subsequent application to the base material. In *Southwestern Portland Cement Co.* v. *Lindley, supra,* at 422, 21 O.O. 3d at 264, 424 N.E. 2d at 308, it was observed that such property was not subject to exemption pursuant to R.C. 5739.01(E)(2):

"* * * This court has consistently held that the mere transportation and storage of unchanged raw materials is not part of the manufacturing process. *National Tube Co.* v. *Glander* (1952), 157 Ohio St. 407; *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra; Ohio Ferro-Alloys Corp.* v. *Kosydar, supra.* Since the equipment is not excepted, the structures and foundations for this equipment should not be excepted. See, generally, *Youngstown Bldg. Material & Fuel Co.* v. *Bowers, supra.*"

Consequently, that portion of the granule conveyance system composed of the silos and silo foundations is not exempt from taxation. With respect to the conveyors which transport the granules to the machine bins, it is likewise important to recognize that such operations are preliminary to the manufacturing process. This is the crucial consideration in determining whether the exception is warranted. In *Tri-State Asphalt Corp.* v. *Glander* (1950), 152 Ohio St. 497, 504-505, 41 O.O. 40, 43, 90 N.E. 2d 366, 370, we remarked:

"The distinction which this court has logically drawn in reference to transportation instrumentalities is that if such instrumentalities are used solely to transport materials to the point of processing, or to transport them from the place of processing after that has been fully completed,

they are not used directly in the production of the processed property, whereas if such instrumentalities are used solely to transport partially processed materials to another location where the processing is continued or completed by the same processor, they are used directly in the production of the processed property."

Inasmuch as the conveyor at issue is used to transport raw materials to the point of processing, it is not exempt from taxation pursuant to R.C. 5739.01(E)(2). Accordingly, we hold that equipment utilized for the storage and delivery of raw materials prior to the transformation thereof into a finished product is not used or consumed directly in the production of tangible personal property and thus is not subject to exemption from sales and use taxation pursuant to R.C. 5739.01(E)(2) and 5741.02(C)(2), respectively.

As to the machine bins, we mentioned previously that the blender box is employed to apply the granules to the saturated felt paper. The machine bins are employed to supply the blender box with a mixture of granules. Accordingly, it is the blender box that is "used *during* and *in* the manufacturing process" as envisioned by our prior decisions. The machine bins supply the blender box and thus are not used directly in the manufacturing process as required by R.C. 5739.01(E)(2).

## II

Appellant contends, however, that the aforementioned items are "adjuncts" within the meaning of former R.C. 5739.01(S) (currently found within the provisions of R.C. 5739.01[R]). For the period relevant to the instant appeal, this section provided:

" 'Manufacturing' or 'processing' means the transformation or conversion of material or things into a different state or form from that in which they originally existed and, *for the purpose of the exceptions contained in division (E)(2) of this section, includes the adjuncts used during and in, and necessary to carry on and continue, production to complete a product at the same location after such transforming or converting has commenced."* (Emphasis added.) 136 Ohio Laws, Part II, 3798.

It has been held that the foregoing section does not obviate the requirement of R.C. 5739.01(E)(2) that "adjuncts" be physically related to the manufacturing process. This court in *Canton Malleable Iron Co.* v. *Porterfield, supra,* rejected any broader interpretation of the subsection:

"Underlying * * * [the taxpayer's] argument is the assumption that the addition of subsection (S), in effect, constitutes a repeal by implication of the 'direct use' requirements of (E)(2). We do not agree. As we have often said, '* * * repeals by implication are not favored and will not be found unless the provisions of the purported repealing act are so totally inconsistent and irreconcilable with the existing enactment as to nullify it.' *Lucas County Commrs.* v. *Toledo* (1971), 28 Ohio St. 2d 214, 277 N.E. 2d 193." *Canton Malleable Iron Co., supra,* at 175, 59 O.O. 2d at 185, 283 N.E. 2d at 442.

Additionally, this court noted that "* * * R.C. 5739.01(S) itself directs that it be read *in pari materia* with (E)(2), thereby clearly implying that we are to give continued effect to the 'direct use' limitation. * * *" *Id.* at 176, 59 O.O. 2d at 185, 283 N.E. 2d at 442.

Thus, merely because the tangible personal property at issue may be essential to production does not render it nontaxable pursuant to former R.C. 5739.01(S). In declining to adopt such

an expansive definition of "adjunct," this court remarked:

"* * * While it is self-evident that * * * [the taxpayer's] system is 'auxiliary' or 'subsidiary' to the manufacturing process itself, it is also arguable that almost any given piece of machinery in any particular plant could be 'subsidiary' or 'auxiliary' to the overall process of manufacturing. If the General Assembly had intended to grant so sweeping an exception as that, excoriating 36 years of our decisions and the legislative judgment that preceded them, we do not believe that they would have done so in such an inconspicuous manner. This is especially so in light of the fact that no alteration was made to the enduring wording of (E)(2)." *Id.* at 176, 59 O.O. 2d at 185, 283 N.E. 2d at 442.

Rather, the test as announced in *Canton Malleable Iron Co.* is as follows:

"Subsection (S) demands that the thing sought to be excepted from taxation be (1) an adjunct, (2) used at the same location, and (3) used after the transforming or conversion has commenced. Subsection (E)(2) adds the additional requirement that the thing be adjunct to *direct* use or consumption. * * *" (Emphasis *sic*.) *Id.* at 176-177, 59 O.O. 2d at 185, 283 N.E. 2d at 442. See, also, *Hawthorn Mellody, Inc.* v. *Lindley* (1981), 65 Ohio St. 2d 47, 49, 19 O.O. 3d 234, 236, 417 N.E. 2d 1257, 1259.

It is beyond question that the blender box which applies granules to the treated felt is used directly in the manufacturing process. The Board of Tax Appeals agreed with this characterization of its function. Inasmuch as the machine bins supply the blender box with granules, it would appear that such items are "adjuncts" to a direct use as contemplated by former R.C. 5739.01(S) and our decision in

*Canton Malleable* and *Hawthorn Mellody, supra.* Accordingly, it is our further determination that equipment utilized to provide an immediate supply of raw materials to machinery employed directly in the production of tangible personal property is an adjunct used during and in the production of a product and necessary to carry on and continue that production. Such equipment is therefore subject to exemption from sales and use taxation pursuant to former R.C. 5739.01(S).

We have previously observed that the silos, silo foundations and conveyor supplying granules to the machine bins are not used directly in the manufacturing process. Appellant maintains that they are nonetheless adjuncts. As noted earlier, the mere fact that these items are essential to production does not qualify them for exception as adjuncts pursuant to former R.C. 5739.01(S). While appellant contends that these items are adjuncts by virtue of their physical connection to the machine bins, adoption of this view would render tangible personal property which amounts to an "adjunct to an adjunct" exempt under the foregoing section. Such a view was specifically rejected by this court in *Copperweld Steel Co.* v. *Lindley* (1987), 31 Ohio St. 3d 207, 213, 31 OBR 404, 409, 509 N.E. 2d 1242, 1248.

Accordingly, the silos, silo foundations, the machine bins and the conveyor linking them are non-exempt tangible personal property pursuant to R.C. 5739.01(E)(2). However, the machine bins are adjuncts used during and in production as envisioned by former R.C. 5739.01(S) and therefore exempt. The decision of the board is therefore affirmed in part and reversed in part and the cause is hereby remanded to the board for modification consistent with this opinion.

*Decision affirmed in part, reversed in part and cause remanded.*

MOYER, C.J., and RESNICK, J., concur.

HOLMES, WRIGHT and H. BROWN, JJ., concur in part and dissent in part.

DOUGLAS, J., concurs in part and dissents in part.

DOUGLAS, J., concurring in part and dissenting in part. I concur in paragraph one of the syllabus of the majority opinion and the judgment of the majority that finds appellant's silos, silo foundations and conveyor to be taxable personal property. I respectfully dissent as to paragraph two of the syllabus and the holding of the majority that the machine bins are "adjuncts" and are therefore exempt.

The key to this and so many other like cases, that we are now seeing on a more frequent basis since this court undertook to "refine" current law, is the definition of "manufacturing" and "processing." R.C. 5739.01(R) (formerly R.C. 5739.01[S]) clearly requires that a "* * * *transformation* or *conversion* of material or things into a *different state or form* from that in which they originally existed * * *" (emphasis added) must take place before the requirement or definition of "manufacturing" or "processing" has been met. R.C. 5739.01(R)(1). The section then goes on to except from taxation "adjuncts" used in production to complete a product. To be an "adjunct," the material or thing must be used, according to R.C. 5739.01 (R)(2), "* * * *after* such transforming or converting has commenced." (Emphasis added.)

The majority opinion concedes that the "* * * machine bins supply the blender box with granules * * *." The actual transforming or converting into a different state or form does not take place in the machine bins. Such transforming or converting does not occur *until* the granules enter the blender box. Thus, since the use of the machine bins occurs *before*—rather than *after*—transforming or converting has commenced, the machine bins cannot be excepted from taxation.

Accordingly, I respectfully concur in part and dissent in part.

H. BROWN, J., concurring in part and dissenting in part. The majority has identified the issues and has stated the applicable law. Further, I agree that the taxpayer's machine bins are exempt from taxation. However, I respectfully dissent from the denial of tax exemption for the silos and for the conveyors which receive granules from the silos.

The resolution of this case turns on when the manufacturing process begins. See R.C. 5739.01(E)(2) and 5741.02(C)(2); *Youngstown Bldg. Material & Fuel Co.* v. *Bowers* (1958), 167 Ohio St. 363, 5 O.O. 2d 3, 149 N.E. 2d 1. The manufacturing process begins where there is a transformation of materials into a marketable product. *Interlake, Inc.* v. *Kosydar* (1975), 42 Ohio St. 2d 457, 7 O.O. 2d 436, 330 N.E. 2d 444.

In the instant case, roofing material is the product being manufactured. The manufacturing process includes the application of a granule mix to felt paper which has been coated with hot asphalt. The silos and conveyors (which the majority excludes from the manufacturing process) are used to meter the granules by color to form the proper "mix" for application to the coated papers. This is an essential part of the process which trans-

forms granules, asphalt and felt paper into a roofing product. Applying *Interlake, Inc. supra,* and *Youngstown, supra,* I would find that this process constitutes manufacturing. Thus the silos and conveyors are "adjuncts" to manufacturing. R.C. 5739.01(R).

For these reasons, I dissent from the decision to deny exemption for the silos and the conveyors which link the silos to the machine bins.

HOLMES and WRIGHT, JJ., concur in the foregoing opinion.