BALL CORPORATION, APPELLANT AND CROSS-APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Cite as *Ball Corp. v. Limbach* (1992), 62 Ohio St.3d 474.]

(No. 90–2495—Submitted October 11, 1991—Decided February 12, 1992.)

*Jones, Day, Reavis & Pogue* and *John C. Duffy, Jr.,* for appellant and cross-appellee.

*Lee I. Fisher,* Attorney General, and *M. Linda Weigand,* for appellee and cross-appellant.

*Per Curiam.* For the reasons which follow, the decision of the BTA is affirmed in part, reversed in part and remanded for further consideration consistent with this opinion.

I

Despite the complexities and improvements in sophisticated manufacturing processes, the issue for resolution in this case is as it was over thirty years

ago when we decided *Youngstown Bldg. Material & Fuel Co. v. Bowers* (1958), 167 Ohio St. 363, 5 O.O.2d 3, 149 N.E.2d 1. Here, as there, the challenge is to identify the beginning and the end of the manufacturing process and to determine whether items in dispute were used or consumed directly in the production of tangible personal property for sale by manufacturing or processing or in "packaging." See former R.C. 5739.01(E)(2) and (R), Am.Sub.H.B. No. 291, 140 Ohio Laws, Part II, 2872, 3216 and 3219, and former R.C. 5739.02(B)(15), Am.S.B. No. 231, 140 Ohio Laws, Part I, 790, 832. It is not to determine whether such items are essential to the operation of an integrated plant; the question is rather, "when does the manufacturing or processing activity begin and end, and is the property used or consumed during and in the manufacturing or processing period." *Id.* at 367, 5 O.O.2d at 5, 149 N.E.2d at 3–4.

Ball contends that manufacturing began at the dryer upon removal of moisture and a change in the molecular structure of EVOH and regrind. The commissioner says processing began in the extrusion machine when pellets were transformed from a solid state into a molten state and, in combination with other raw materials, bottles were produced. The commissioner also points out that Ball's plant manager conceded that after the removal of the moisture the pellets of raw material remained as pellets with no visible difference.

It is true that EVOH was hygroscopic and it was essential that the moisture be removed in order to maintain the integrity and *salability* of the product. However, following the drying process the raw material was not changed in form. It was still raw material. Moreover, it was not Ball's final salable product. On the other hand, following the processing within the extruder and blow molder, plastic bottles were available for insertion into partitioned cartons, to be shrink-wrapped and shipped to its customers. Thus, manufacturing began at the coextrusion machine and ended after the bottles were trimmed and made ready for shipment.

"Equipment utilized for the storage and delivery of raw materials prior to the transformation thereof into a finished product is not used or consumed directly in the production of tangible personal property and thus is not subject to exemption from sales and use taxation pursuant to R.C. 5739.01(E)(2) and 5741.02(C)(2), respectively." *Bird & Son, Inc. v. Limbach* (1989), 45 Ohio St.3d 76, 543 N.E.2d 1161, paragraph one of the syllabus. As we stated, *id.* at 78, 543 N.E.2d at 1164, quoting *Natl. Tube Co. v. Glander* (1952), 157 Ohio St. 407, 409, 47 O.O. 313, 314, 105 N.E.2d 648, 650:

" ' * * * every sale or use of tangible personal property in this state is [presumed to be] taxable[,]' * * * and * * * exemptions from sales or use

taxation 'are to be strictly construed, and one claiming exemption must affirmatively establish his right thereto.' * * *

" * * * It has been held that manufacturing and processing ' " * * * imply essentially a transformation or conversion of material or things into a different state or form from that in which they originally existed—the actual operation incident to changing them into marketable products." ' *Canton Malleable Iron Co. v. Porterfield* [ (1972), 30 Ohio St.2d 163] at 170, 59 O.O.2d [178] at 181–182, 283 N.E.2d [434] at 439. * * *"

Ball corporation did not sell EVOH or regrind pellets; it sold bottles in partitioned cartons.

" * * * ' * * * The manufacturing process for which a beginning and end must be determined is the one that produces * * * [the] marketable product. * * *' *Interlake, Inc. v. Kosydar* (1975), 42 Ohio St.2d 457, 459, 71 O.O.2d 436, 437, 330 N.E.2d 444, 446[.] * * *

" * * *

" * * * Accordingly, the exemption is dependent upon the direct application of the property to the manufacturing process and not merely its contemporaneous utilization during the fabrication of a marketable product." *Id.,* 45 Ohio St.3d at 79, 543 N.E.2d at 1164–1165.

Moreover, there is no particular significance to when an item of tangible personal property might change form unless it is "converted into a *marketable product.*" (Emphasis *sic.*) *Id.* at 80, 543 N.E.2d at 1165.

In *Bird & Son, supra,* as in the instant case, the transportation of raw material to the machine is "preliminary to the manufacturing process," *id.* at 80, 543 N.E.2d at 1166, and "equipment utilized for the storage and delivery of raw materials prior to the transformation thereof into a finished product is not used or consumed directly in the production of tangible personal property * * *." *Id.* at 81, 543 N.E.2d at 1166.

The test for determining the exemption from taxation of equipment by reason of its status as adjunct under former R.C. 5739.01(S), later codified at (R), is: " * * * as announced in *Canton Malleable Iron Co.* * * *:

" 'Subsection (S) demands that the thing sought to be excepted from taxation be (1) an adjunct, (2) used at the same location, and (3) used after the transforming or conversion has commenced. Subsection (E)(2) adds the additional requirement that the thing be adjunct to *direct* use or consumption. * * *' (Emphasis *sic.*) [*Canton Malleable Iron Co., supra,* ] at [30 Ohio St.2d] 176–177, 59 O.O.2d at 185, 283 N.E.2d at 442. * * *" *Bird & Son, supra,* 45 Ohio St.3d at 82, 543 N.E.2d at 1167.

Since the transformation occurs only after material has left the hoppers, the function of the hoppers is preliminary to the actual transformation of tangible personal property into the product which is to be sold by Ball. Therefore, it falls short of entitlement to exemption. With regard to the appeal of Ball Corp., the decision of the BTA which denied exception for the raw material handling and processing system is reasonable and lawful and is affirmed. See, also, *Rotek, Inc. v. Limbach* (1990), 50 Ohio St.3d 81, 552 N.E.2d 640.

## II

The Tax Commissioner contests the exception of the (Wayne) automated carton-forming system and the (Buschman) automated conveyor system. R.C. 5739.02(B)(15) provides an exception for machinery and equipment used in "packaging." She urges that exception be denied because only machinery and equipment used "in placing the item for sale in the packages" qualifies. She contends that the BTA erred in extending the exception to machinery or equipment which is neither packaging machinery or equipment, nor an integral part of packaging machinery or equipment. Exceptions from taxation are to be strictly construed. The statute defines packaging as "placing therein" and no exception is provided for equipment used to *form* a package. Neither is an exception provided for machinery which transports packages as the machinery here in issue does. "To be excepted from taxation under R.C. 5739.02(B)(15), machinery or equipment must be used in placing tangible personal property produced for sale in packages." *Hawthorn Mellody, Inc. v. Lindley* (1981), 65 Ohio St.2d 47, 52, 19 O.O.3d 234, 238, 417 N.E.2d 1257, 1261.

Ball argues that the equipment was essential to and an integral part of the packaging process and was thus entitled to exception from taxation. Moreover, and alternatively, in its notice of appeal to this court and in its reply brief, Ball asserted that exception must be granted under former R.C. 5739.01(E) because the carton-forming and conveying system was: "use[d] * * * directly in the production of tangible personal property * * * for sale by manufacturing [or] processing."

We agree with the commissioner that the carton-forming and conveying system is not packaging machinery or equipment or an integral part thereof, and thus is not entitled to exception on that basis. The BTA decision granting that exception is unreasonable and unlawful and is reversed. However, the carton-forming system which produces cartons which Ball sells to its customers may qualify for exception. The BTA did not address this issue because it allowed for exception from taxation on another ground. The matter is remanded to the BTA with instructions to determine whether the automatic

carton-forming system is excepted from taxation as machinery or equipment used directly in the production of tangible personal property for sale by manufacturing or processing as contemplated by former R.C. 5739.01(E).

With regard to the automated carton-forming system and the automated conveyor system, the BTA decision finding the machinery or equipment excepted from taxation is unreasonable and unlawful and is reversed and the cause is remanded.

*Decision affirmed in part,*
*reversed in part*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.