[Cite as *Country Pure Springwater, Inc. v. McClain*, 2019-Ohio-3989.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| COUNTRY PURE SPRINGWATER, INC., | : | **O P I N I O N** |
| Appellant, | : | |
| | : | **CASE NO. 2018-G-0185** |
| - vs - | : | |
| JEFF McCLAIN, TAX COMMISSIONER, | : | |
| OHIO DEPARTMENT OF TAXATION, | | |
| | : | |
| Appellee. | : | |

Appeal from the Ohio Board of Tax Appeals, Case No. 2017-928.

Judgment: Affirmed in part and reversed in part; remanded.

*Gino Pulito* and *Christopher J. Caffarel*, Pulito & Associates, LLC, 230 Third Street, Elyria, OH 44035 (For Appellant).

*Dave Yost*, Ohio Attorney General, and *Daniel G. Kim*, Assistant Attorney General, 30 East Broad Street, 25th Floor, Columbus, OH 43215 (For Appellee).

TIMOTHY P. CANNON, J.

{¶1} Appellant, Country Pure Springwater, Inc. ("CPS"), appeals the decision of the Ohio Board of Tax Appeals ("BTA"), which affirmed the final determination of the Tax Commissioner ("the Commissioner") to issue three assessments for employer withholding tax for the period ranging from 1988 to 2008. We reverse and remand the judgment of the BTA with regard to the calculation of the assessment. In all other respects, the BTA's decision is affirmed.

{¶2} CPS was an Ohio corporation in the business of selling spring water and related goods and services. Felix Warner ("Warner") was, at all times in which the audit examined, the sole owner and President of CPS. Although the parties dispute exactly when CPS ceased to operate, they agree that CPS did not operate as a business in Ohio after 2008.

{¶3} According to the testimony of audit agent Elizabeth Werner ("Elizabeth"), she discovered CPS as an appropriate candidate for audit through numerous recorded 941 liens for federal withholding tax liability from 1988 through 2005. Elizabeth made several attempts through letters and phone calls to contact CPS for additional information on the state withholding taxes; however, at no point during her audit was she able to obtain any documentation from CPS. After completing the audit, Elizabeth sent another letter to CPS, through counsel, which contained the audit results and requested a response. CPS did not respond with any documentation or other evidence related to the withholding taxes, but counsel for CPS did request a meeting with Elizabeth to review the matter. After several unsuccessful attempts to schedule a meeting, Elizabeth forwarded the audit results to the Commissioner for assessment. CPS was assessed outstanding withholding taxes in the total amount of approximately $401,541.96, including outstanding interest and penalties of 50% imposed on each of the three assessments. Upon a request for reassessment, the Commissioner upheld all three of the assessments.

{¶4} Thereafter, CPS appealed the Commissioner's decision to the BTA. On April 30, 2018, a hearing was held on the appeal. Warner was called as a witness on behalf of CPS, and Elizabeth was called as a witness on behalf of the Commissioner.

2

{¶5} Warner testified that a member of his office staff ("E.C.") was responsible for all the financial responsibilities, including fulfillment of the tax obligations. Shortly before CPS allegedly ceased operating, Warner discovered that E.C. had been engaged for many years in embezzling and stealing from CPS. Because of E.C.'s fraudulent conduct, Warner testified he had no way of knowing that the withholding taxes had not been paid. Warner stated his belief that the taxes had been paid. He testified, however, that the documentation establishing the payments had not been maintained by himself or his accountant due to the substantial number of years related to the audit and Warner's practice of purging paperwork after several years of storage. CPS offered as evidence the first page of federal IRS form 1120S for each of the tax years in dispute from 1995 to 2008, which contained wage numbers differing significantly from the estimates Elizabeth used during the audit. CPS also offered as an exhibit a settlement agreement between CPS (d/b/a Cherry Knoll Spring Water) and E.C. evidencing the embezzlement and theft, which was admitted without objection.

{¶6} Elizabeth testified regarding her experience conducting between 30 and 50 audits per year since 2007. Although she testified that during her audit she did not have the 1120S forms submitted by CPS at the hearing, the income figures from those forms were listed in Elizabeth's audit spreadsheet and are part of the record. It is unclear when these figures were first available to her, but it appears it was sometime prior to the BTA hearing. Elizabeth stated that it is not her common practice to use the wage figures on those federal forms because the numbers "are often inflated." There was no explanation offered for why she believed this. In addition, if the numbers were inflated, it would result in a higher tax than what the taxpayer would owe. She stated that her preferred practice

3

is to compare the W-2s for employees to the 941 federal tax liens, but she was not provided with any W-2 information for CPS.

{¶7}   Elizabeth explained she relied on estimations because she had not received any response, paperwork, or other documentation from CPS after several requests, including after the correspondence informing CPS of her findings.  These estimations included two methods germane to the present dispute: (1) regarding withholding amounts for income tax figures discovered in the department's internal database, Elizabeth took the number discovered and multiplied it by 2; and (2) where income information was not available through the database, Elizabeth took the federal 941 lien information—averaged by quarter—and divided the total figure by 3.  Elizabeth explained that the multiplier in the former instance was to account for incomplete information contained in the database, and the divider in the latter instance was in consideration of the federal lien numbers containing various additional amounts not related to income tax, such as additional taxes, interest, and penalties.  Elizabeth confirmed multiple times that these are the typical methods used when conducting an audit; however, she conceded that no written policy existed establishing the practices and that no studies, data, or other evidence existed supporting the department's unwritten estimation policy.

{¶8}   The Commissioner offered as evidence a spreadsheet created by Elizabeth evidencing the federal 941 lien amounts and estimations for each quarter, as well as five letters of correspondence sent by her to both CPS and counsel for CPS during the course of the audit.  All of these were admitted without objection.

{¶9}   On November 14, 2018, the BTA affirmed the decision of the Commissioner, determining that CPS had failed to meet its burden to prove either that

the methodologies used in calculating the withholding tax assessments were not performed in good faith and with sound judgment, or that the penalties assessed by the Commissioner were an abuse of discretion.

{¶10} CPS has timely filed four assignments of error for our review. For clarity and convenience, we combine and consider the first three assignments:

> [1.] The board of tax appeal's decision was unreasonable and unlawful by finding that the information contained on the federal tax returns provided by Appellant were unreliable and that the numbers contained therein were inflated.

> [2.] The Board of Tax Appeals committed error by agreeing to the Tax Commissioner's formula of applying a one-third (1/3) factor to the federal tax liens filed with the Lorain County Recorder's office and a multiplier of 2 to the internal "COGNOS" database information, in estimating the taxes owed by Appellant, even though there exists no study, data, or reasonable basis to support the accuracy of those computations.

> [3.] The Board of Tax Appeals committed error by finding that there was an absence of evidence supporting better estimates of liability than those implemented by the Tax Commissioner in this case.

{¶11} R.C. 5717.04 provides for an appeal from a Board of Tax Appeals' decision to the Supreme Court of Ohio or the court of appeals and explains the standard of review:

> If upon hearing and consideration of such record and evidence the court decides that the decision of the board appealed from is reasonable and lawful it shall affirm the same, but if the court decides that such decision of the board is unreasonable or unlawful, the court shall reverse and vacate the decision or modify it and enter final judgment in accordance with such modification.

{¶12} Stated differently, the Board of Tax Appeals "'is responsible for determining factual issues and, if the record contains reliable and probative support for these BTA determinations,' this court will affirm them." *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, ¶14, quoting *Am. Natl. Can Co. v. Tracy*, 72 Ohio St.3d 150, 152 (1995).

5

Conversely, we "'will not hesitate to reverse a [Board of Tax Appeals] decision that is based on an incorrect legal conclusion.'" *Id.*, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino, Tax Commr.*, 93 Ohio St.3d 231, 232 (2001).

{¶13} "It does not matter whether we [as a reviewing court] might have weighed the evidence differently from the board had this court been making the original determination. As long as there is evidence which reasonably supports the conclusion reached by the board, its decision must stand." *Highlights for Children, Inc. v. Collins, Tax Commr.*, 50 Ohio St.2d 186, 187-188 (1977), citing *Jewel Cos. v. Porterfield*, 21 Ohio St.2d 97, 99 (1970). "'The Court of Appeals is bound by the record that was before the Board of Tax Appeals and may not substitute its judgment for that of the board.'" *Kister v. Ashtabula Cty. Bd. of Revision*, 11th Dist. Ashtabula No. 2007-A-0050, 2007-Ohio-6943, ¶12, quoting *Mobile Instrument Serv. & Repair, Inc. v. Tax Commr. of Ohio*, 3d Dist. Logan No. 8-2000-20, 2000 WL 1783574, *2 (Dec. 6, 2000) citing *Denis Copy Co. v. Limbach*, 76 Ohio App.3d 768 (8th Dist. 1992).

> {¶14} [E]very employer, including the state and its political subdivisions, maintaining an office or transacting business within this state and making payment of any compensation to an employee who is a taxpayer shall deduct and withhold from such compensation for each payroll period a tax computed in such manner as to result, as far as practicable, in withholding from the employee's compensation during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due from the employee * * *. The employer shall deduct and withhold the tax on the date that the employer directly, indirectly, or constructively pays the compensation to, or credits the compensation to the benefit of, the employee.

R.C. 5747.06(A). "The method of determining the amount to be withheld shall be prescribed by rule of the tax commissioner." *Id.* "[E]very employer required to deduct

6

and withhold any amount under section 5747.06 of the Revised Code shall file a return and shall pay the amount required by law[.]" R.C. 5747.07(B).

{¶15} The rule is well settled that a taxpayer challenging the assessment has the burden to show in what manner and to what extent the commissioner's investigation and audit, and the findings and assessments based thereon, were faulty and incorrect. *See, e.g.*, *Krehnbrink v. Testa*, 148 Ohio St.3d 129, 2016-Ohio-3391, ¶30, quoting *Maxxim Med., Inc. v. Tracy*, 87 Ohio St.3d 337, 339 (1999) (quotations omitted). *See also Kister*, *supra*, at ¶12.

{¶16} CPS does not dispute that it had a duty to collect withholding taxes from its employees and that it had a duty to pay those taxes to the department of taxation. Further, CPS does not dispute that it no longer possesses the documentation and evidence to establish that the taxes were paid. Thus, CPS concedes that a tax assessment is appropriate, and the sole contention on appeal in the first three assignments of error concern the manner in which the Commissioner calculated and determined the amount to assess in unpaid taxes.

{¶17} The Commissioner presented testimony evidence from Elizabeth, the conductor of the audit on CPS, that no documentation was provided from which she could determine accurate wage numbers. Because of CPS's lack of response to correspondence and inability to provide the wage information, Elizabeth testified that she utilized commonly accepted department methods for calculating an estimate of the required withholding. Although the 1120S information provided by CPS at the appeal hearing was not made available to Elizabeth by CPS prior to her final determinations, it appears she did have the information at some point prior to the BTA hearing. She testified

7

from her knowledge and experience that she does not typically utilize the information on those forms in determining wage figures because she believes it is not accurate. Without any explanation, her basis for this belief—as noted earlier—was that these figures are often inflated. However, these figures represent actual wage information filed with CPS's federal tax filings for each year. If they are inaccurate because they are inflated, this will result in a higher tax. The multiplier/divider estimation efforts utilized by Elizabeth resulted in a substantially more inflated assessment figure than if she had utilized the information from the 1120S forms.

**{¶18}** The statute specifically states that an assessment shall be made "based upon any information *in the commissioner's possession*." R.C. 5747.13(A) (emphasis added). It certainly appears the 1120S information was in the Commissioner's possession at some point prior to the BTA hearing, as it appears in Elizabeth's spreadsheet that is part of the record from the BTA hearing.

**{¶19}** A large part of the problem in this case is the length of time it took the state to discover the alleged non-compliance. It is understandable that the taxpayer would lack documentation going back 25 years. It is not reasonable to expect retention of documentation for that length of time.

**{¶20}** Given the specific facts of this case, we hold that it was unreasonable to allow calculation of the assessments using Elizabeth's estimates for the years 1995 through 2008. As noted, she testified there are no studies, data, or other evidence that support the department's unwritten methodology in computing the assessment. The most reliable information concerning the tax liability was contained in the 1120S information for the years 1995 through 2008.

8

**{¶21}** The BTA's affirmance of the assessment total is therefore reversed, and the matter is remanded for a more accurate assessment of the amount of withholding tax owed by CPS utilizing the 1120S income and wage figures for the years 1995 through 2008.

**{¶22}** CPS's first, second, and third assignments of error have merit.

**{¶23}** CPS's fourth assignment of error states:

> [4.] The Board of Tax Appeals committed error by refusing to eliminate the penalty and finding that the Tax Commissioner did not abuse its discretion regarding the imposition of the penalties in this matter.

**{¶24}** Pursuant to R.C. 5747.15(A)(4)(a), "[i]f an employer withholds from employees the tax imposed by section 5747.02 of the Revised Code and fails to remit the tax withheld to the state as required by this chapter on or before the dates prescribed for payment, a penalty may be imposed not exceeding fifty per cent of the delinquent payment." However, "[a]ll or part of any penalty imposed under this section may be abated by the commissioner if the taxpayer, qualifying entity, or employer shows that the failure to comply with the provisions of this chapter is due to reasonable cause and not willful neglect." R.C. 5747.15(C).

**{¶25}** Remission of this penalty is discretionary. *Jennings & Churella Constr. Co. v. Lindley, Tax Commr.*, 10 Ohio St.3d 67, 70 (1984). Likewise, "[a]ppellate review of this discretionary power is limited to a determination of whether an *abuse* has occurred." *Id.* (emphasis sic.); *see also Interstate Motor Freight Sys. v. Bowers, Tax Commr.*, 170 Ohio St. 483, 484 (1960). "An abuse of discretion connotes a decision that is unreasonable, arbitrary or unconscionable." *Id.*, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980) and *Chester Twp. v. Geauga Cty. Budget Comm.*, 48 Ohio St.2d 372, 373 (1976). "'Abuse

9

of discretion' is a term of art, describing a judgment neither comporting with the record, nor reason. * * * Further, an abuse of discretion may be found when the trial court 'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Carson v. Holmes*, 11th Dist. Portage No. 2010-P-0007, 2010-Ohio-4199, ¶23, quoting *Thomas v. Cleveland*, 176 App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

**{¶26}** CPS argues that the penalties imposed by the Commissioner should be reduced because it was the victim of embezzlement by a former employee, and also because the Commissioner was unable to produce evidence that the withholding taxes were not, in fact, paid by CPS each year. We are not persuaded that the imposition of a penalty in these circumstances constitutes an unreasonable, arbitrary or unconscionable action.

**{¶27}** The BTA found that CPS failed to prove that the Commissioner abused its discretion in refusing to remit the penalty because CPS did not take action to pay the assessments upon learning of its liabilities. CPS does not dispute failing to take any action with regard to the tax liability following the discovery of E.C.'s fraudulent acts in 2008. Therefore, the BTA correctly considered the argument set forth by CPS and determined the circumstances in this matter demonstrate that the Commissioner did not abuse its discretion with regard to the imposition of penalties.

**{¶28}** Finally, as discussed above relating to evidence of tax payments, it is not the burden of the Commissioner to produce evidence that CPS did not pay the withholding taxes. CPS bears the burden of demonstrating that the taxes were paid, and it was unable to produce any evidence to sustain that burden.

**{¶29}** CPS's fourth assignment of error is without merit.

**{¶30}** The decision of the Board of Tax Appeals is affirmed with regard to the imposition of a penalty and reversed with regard to the calculation of withholding tax owed. The matter is remanded to the Board of Tax Appeals for further determination consistent with this opinion.

CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.

concur.