The FIFTH COLUMN, Plaintiff,

v.

VILLAGE OF VALLEY VIEW, OHIO, Defendant.

No. 1:98CV1343.

United States District Court, N.D. Ohio, Eastern Division.

July 16, 1998.

Steven A. Sindell, Daniel Mark Sucher, Sindell, Young & Guidubaldi, Cleveland, OH, for Fifth Column LLC, plaintiff.

Frederick W. Whatley, Walter & Haverfield, Cleveland, OH, David A. Lambros, City Of Brookpark, Department Of Law, Brookpark, OH, for Valley View, Ohio, Village of, defendant.

## ORDER

O'MALLEY, District Judge.

Plaintiff The Fifth Column, L.L.C. brings this action against defendant Village of Valley View, Ohio, seeking injunctive relief. Specifically, Fifth Column asks the Court to preliminarily enjoin Valley View from enforcing Ordinance § 1268.03. This ordinance would have the effect of preventing Fifth Column from operating an adult cabaret, known as "Cleveland PM," in its present location. For the reasons stated below, Fifth Column's motion for preliminary injunction (docket no. 4) is **GRANTED** as follows: Valley View is preliminarily enjoined from enforcing Village Ordinances § 1268.03 (June 15, 1998) and § 1268.03 (Jan. 3, 1995) against Fifth Column, to the extent that, pending final judgment in this matter or until further Order of the Court, Valley View may not prohibit Fifth Column from operating its adult entertainment business at its present location of 7503 Granger Road in Valley View, Ohio, for reasons of its location alone. This Order does not, however, preclude Valley View from legally enforcing any other valid ordinance against Cleveland PM, including applicable building and zoning codes and health and safety ordinances.

The Court further ORDERS the parties to report to the Court how they wish to proceed, in accordance with section IV of this opinion.

### I. Background.

Several years ago, Cleveland PM was a well-known restaurant operating in Valley View, Ohio, an unchartered municipal corporation. Before it closed, Cleveland PM served alcohol and presented live entertainment, operating out of a stand-alone building at the busy corner of Granger and Canal Roads. After Cleveland PM closed,

the building was purchased by plaintiff Fifth Column, which then undertook a significant amount of interior remodeling. This interior remodeling was done in accordance with a building permit obtained from the State of Ohio. Fifth Column's intention was, and remains, to open an adult cabaret in the building, featuring topless female dancers, and to market itself to an upscale clientele. Fifth Column plans to continue to use the name "Cleveland PM" for the cabaret, and states its "business and clientele will be very similar to that of Tiffany's Cabaret located in Cleveland's Flats." [1]

After it completed the interior remodeling of Cleveland PM, Fifth Column obtained a certificate of occupancy from the State of Ohio Department of Commerce, Division of Industrial Compliance. Fifth Column did not, however, obtain or seek approval from the Valley View Building Inspector, in the form of a building permit or occupancy certificate, allegedly because Fifth Column did not trust Valley View to enforce its occupancy certificate requirements in an objective manner, given the proposed use of the building. After obtaining the State occupancy certificate, Cleveland PM opened its doors for business on June 8, 1998. The next day, June 9, 1998,Valley View's Police Chief delivered to Cleveland PM a "notice of violations." The notice stated that "You are not permitted to be opened for business until you have satisfied the violations and the Building and Fire Departments have completed their inspections. Failure to cease business will subject you to penalties set forth in the Codified Ordinances. You are hereby ordered to cease all work and business until the violations are corrected." The specific violations noted were: (1) failure to obtain a building permit for the interior construction, (2) failure to obtain an occupancy certificate, (3) failure to apply for an occupancy certificate 15 days before occupancy, and (4) failure to obtain an occupancy certificate after a change of tenancy.

On June 10, 1998—the day after Valley View served its notice of violations upon Cleveland PM—Fifth Column filed its complaint in this case, together with a motion for temporary restraining order ("TRO"). As part of its complaint, Fifth Column asserted that Valley View's "Adult Use Ordinance," ordinance § 1268.03, was unconstitutional, and that Valley View was relying at least in part on the Adult Use Ordinance to shut down Cleveland PM.

The Court held a hearing on Fifth Column's motion for TRO on the same day. At the TRO hearing, counsel for Valley View conceded that the primary issue driving the case was whether the location of Cleveland PM conformed with Valley View's Adult Use Ordinance, and whether the Adult Use Ordinance was constitutional. Valley View's counsel did not, for example, argue that Valley View sought to close Cleveland PM because there existed some important, substantive elements of the Valley View building code that were different from, or in excess of, the State of Ohio building code, so that the State of Ohio's occupancy certificate was somehow insufficient for Valley View. *See* transcript at 9 (June 10, 1998).[2] Rather, Valley

---

1. In a separate case, the Honorable George White premised his conclusion that a City of Cleveland adult use ordinance was unconstitutional, as applied to a business known as Tiffany's Cabaret, in part on a finding that Tiffany's attracts and markets itself to an upscale clientele. It does a substantial amount of credit card business, and, while it does not have a strictly enforced dress code, business attire is the predominant dress of its patrons. *Cleveland's PM on the Boardwalk v. City of Cleveland*, no. 92–CV–1412, slip op. at 4, ¶ 9 (N.D.Ohio August 12, 1992). Fifth Column

professes the desire to run a similar operation.

2. THE COURT: But the only area you are purporting to permit or not permit here is occupancy pursuant to your zoning. That's what you're saying, right?

MR. LAMBROS: That's correct. And also there are some building code sections of local ordinances I don't know if they come into play with this respect to this, Cleveland PM that I don't believe are in any way different or

View's position was essentially that, even if Cleveland PM had properly applied for a Valley View building permit and occupancy certificate, and even if Cleveland PM met all the other building code requirements, as the state-issued permit implied, Valley View would still not issue an occupancy certificate because Cleveland PM's location was in violation of the Valley View Adult Use Ordinance, which was part of the applicable zoning code. Valley View thus asserted that its zoning code requirements were "subsumed" into the occupancy certificate requirements, and that it believed only its zoning requirements were unsatisfied.[3]

The Valley View Adult Use Ordinance at issue is codified at Valley View Ordinance § 1268.03. At the time of the TRO hearing, this ordinance read as follows: [4]

No person shall cause or permit the establishment of an adult entertainment business within one mile of any public or private school, pre-school, or day-care center or within 2,000 feet of any residential zoning district, residential dwelling, church or park. For purposes of this section, distances shall be measured in a straight line, without regard to intervening structures or objects, from the nearest portion of the building within which the adult entertainment business is located to the nearest:

(a) Residential district boundary line; or

(b) Property lines of the premises of a public or private school, pre-school or day care center or residential zone, residential dwelling, church or park.

§ 1268.03 (Jan. 3, 1995). Valley View claimed at the TRO hearing that Cleveland PM was in violation of this ordinance because: (1) it is located less than 2,000 feet from the Cleveland Metroparks "tow path," which travels through the Village and which Valley View considers a park; and (2) it is located less than one mile from a school located in the neighboring city of Cuyahoga Heights, which is attended by Valley View children.

To these arguments, Fifth Column responded that: (1) the tow path is not a park, but rather an unused and overgrown trail; (2) Valley View is not allowed to zone uses within its own boundaries by reference to the propinquity of the uses to a school located outside those boundaries; and (3) even conceding points one and two, the Adult Use Ordinance worked to prohibit location of an adult entertainment business virtually everywhere within Valley View, and is thus unconstitutional. Regarding this third point, Fifth Column asserted that virtually every piece of habitable land within the Village was either within one mile of a school or within

---

more restrictive than the State, but there are building code ordinances.

THE COURT: To the extent then [that Cleveland PM] satisf[ies] the State [building code], [it] would satisfy [the Valley View building ordinances].

MR. LAMBROS: Yes.

THE COURT: So what you're saying is that the issue of the validity of your zoning requirements is ... tied with the occupancy [certificate].

MR. LAMBROS: I think that's a fair assessment.

**3.** This position is consistent with and, indeed, dictated by Valley View law. Valley View Ordinance § 1424.05 states that the Valley View Building Inspector must inspect build-

ings within 15 days of application for an occupancy certificate, and determine compliance with the Building & Housing Code, *the Zoning Code,* and other ordinances and regulations of the Village applicable to the construction, alteration, maintenance or operation of structures. (Emphasis added). The Adult Use Ordinance is certainly an ordinance applicable to the operation of a structure, and is contained in the Village Zoning Code. Thus, Valley View's issuance of an occupancy certificate depends on Cleveland PM's meeting the locational requirements contained in the Adult Use Ordinance; as such, the locational restrictions in the Adult Use Ordinance are subsumed into the occupancy certificate requirements.

**4.** As explained below, Valley View later amended the language of this ordinance.

2,000 feet of a residential district, residence, or park.[5]

After hearing these arguments, the Court granted the requested TRO—but only for a very limited period of time. The Court noted that it was unable, at that juncture and on the limited evidence presented, to determine whether the Adult Use Ordinance was constitutional, but that Fifth Column had shown a substantial likelihood of success on the merits and a certainty of irreparable harm absent the injunction. Thus, the Court enjoined Valley View from enforcing the Adult Use Ordinance and occupancy certificate requirement against Fifth Column for a period of five days, until June 15, 1998, in order to maintain the status quo. The Court ordered the parties to reconvene at a hearing on June 15, 1998 to present further evidence on the constitutionality of the Adult Use Ordinance, and to address Valley View's claim that Fifth Column's failure to apply for a local occupancy certificate justified closure, even if only temporarily, of Cleveland PM during the permitting process.[6]

During the five-day interim, Valley View not only prepared for the Court's hearing, it also decided to amend its Adult Use Ordinance. Valley View apparently pursued this amendment because, after consideration of applicable and binding Supreme Court precedent, it feared the existing Adult Use Ordinance, as Fifth Column had argued, was excessively restrictive. Thus, on Sunday, June 14, 1998, Valley View's Council and Mayor passed Ordinance 98–6–5, which, inter alia: (1) repealed the existing Adult Use Ordinance, § 1268.03; and (2) enacted a new § 1268.03, which reads as follows:

No person shall cause or permit the establishment of an adult entertainment business within 1,000 feet of any public or private school, pre-school, or day-care center, any residential zoning district, church, park or other adult entertainment business. For purposes of this section, distances shall be measured in a straight line, without regard to intervening structures or objects, from the nearest portion of the building within which the adult entertainment business is located to the nearest:

(a) Residential district boundary line; or

(b) Property lines of the premises of a public or private school, pre-school or day care center or residential zone, church, park, or other adult entertainment business.

§ 1268.03 (June 15, 1998). Essentially, the changes between the old and new § 1268.03 were: (1) the one-mile limit from any school or day-care center was decreased to 1,000 feet; (2) the 2,000–foot limit from any church, park, or residential zoning district was decreased to 1,000 feet; (3) the 2,000–foot limit from any residence (as opposed to any residential zoning district) was dropped completely; and (4) a 1,000–foot limit from any other adult entertainment business was added. While Cleveland PM's location satisfied most of the limitations under the new § 1268.03, it still failed under the new ordinance, according to Valley View, because Cleveland PM's building was within 1,000 feet of a park (the tow path).

5. In regard to this third point, Fifth Column relied upon Supreme Court precedent which makes clear that, while zoning ordinances can be used to limit the areas within which adult business uses may locate, a zoning ordinance cannot be so restrictive that it effectively leaves no location available at all there must remain reasonable alternative avenues of communication. *City of Renton v. Playtime Theatres,* 475 U.S. 41, 53, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); *Young v. American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

6. Regarding this claim, Valley View argued that, even if its Adult Use Ordinance is unenforceable, and even if its ultimate issuance of an occupancy certificate was inevitable, it still had the right to insist upon Fifth Column's compliance with the permitting process.

The Court proceeded to hold its June 15, 1998 hearing. At this hearing, Valley View first notified the Court and Fifth Column of the amendment to its Adult Use Ordinance. Valley View also revealed a change in its view of its own building code. At the Court's initial TRO hearing, Valley View had essentially conceded that the requirements contained in its own building code were not "in any way different or more restrictive than the [Ohio State building code]," so that the exercise of applying for and receiving a local occupancy certificate would be a mere formality, from a building and fire safety standpoint, once a state-authorized occupancy certificate had been obtained. *See* footnote 2, *supra.* At the June 15, 1998 hearing, however, Valley View asserted that its building code *did* contain requirements additional to and not in conflict with the Ohio State building code, and Valley View insisted it had a right to ensure compliance with these additional requirements. As an example, Valley View noted that its building code required Cleveland PM to install two carbon monoxide detectors, Ordinance § 1472.01, while the Ohio state building code had no such requirement. Valley View now argued that *no* business could lawfully operate in the Cleveland PM building absent a Valley View occupancy permit, because the building did not meet Valley View's building code and had not passed a fire inspection. According to Valley View, Cleveland PM's failure to meet the locational requirements contained in the (new) Adult Use Ordinance was now merely an additional reason that an occupancy certificate might not issue if Valley View were given the chance to enforce its occupancy certificate requirements.

In response to Valley View's various arguments, Fifth Column contended that:

(1) because Cleveland PM had obtained an occupancy certificate from the State of Ohio, Valley View could not impose additional requirements before issuing its own occupancy certificate; (2) Cleveland PM was exempt from the Valley View building permit and occupancy certificate requirements because, under Valley View's own building code, no permit or certificate is required if the building alterations are "minor;" (3) Cleveland PM was not in violation of the new Adult Use Ordinance, because the tow path is not a "park;" (4) even as rewritten, the Adult Use Ordinance remained unconstitutional because it still did not leave available any reasonable alternative properties where an adult cabaret could locate; and (5) the Adult Use Ordinance was unconstitutional because it was aimed specifically at curbing Fifth Column's speech, and did not further a vital governmental interest by the least restrictive means.[7]

At the conclusion of the June 15, 1998 hearing, the Court ruled from the bench and declined to extend its earlier TRO. Regarding Fifth Column's various arguments, the Court concluded as follows:

1. Fifth Column's argument that Valley View could not require it to obtain a building permit and occupancy certificate from Valley View, in addition to the permit and certificate obtained from the State of Ohio, was not well-taken. A municipality can adopt building and occupancy codes that are more restrictive than the State's codes, so long as the local code does not conflict with the State code. *Middleburg Heights v. Ohio Bd. of Bldg. Standards,* 65 Ohio St.3d 510, 515, 605 N.E.2d 66 (1992). Valley View's interest in enforcing its building code was legitimate and reasonable, irrespective of the type of business to which it applied, so Valley View could enforce its

7. Fifth Column also appeared to argue that Valley View was somehow estopped from enforcing its occupancy certificate ordinance because the Village had failed to inspect Cleveland PM despite being on notice, from news articles and otherwise, of Fifth Column's intention to remodel and reopen the facility. The argument that Valley View was under an obligation to inspect Cleveland PM in the absence of an application for an occupancy certificate, or even an oral request from the owners or operators of the facility, is singularly unpersuasive; the Court gave it, and continues to give it, no weight.

building code and inspection requirements against Cleveland PM.

2. Fifth Column's argument that it was exempt from the Valley View building permit and occupancy certificate requirements under Valley View's own code was not well-taken because, whatever "minor alterations" means, Fifth Column's alterations to Cleveland PM were not minor—Fifth Column asserted it spent $200,000 to alter the interior of the building.

3. Fifth Column's argument that the "tow path," which runs much of the length of Valley View, is a roadway and not a "park," was not well-taken. The tow path is owned by Cleveland Metroparks and is currently being developed into a walkway and bike path. It is an area of public land set aside for recreation, and is part of the Metroparks Ohio and Erie Canal Reservation. Further, Valley View's reasonable interpretation of its own ordinance to include the tow path as a "park" deserves some deference.

4. Fifth Column did not show a strong likelihood of success on the merits of its claim that the Adult Use Ordinance, as rewritten, was unconstitutional for not allowing any reasonable alternative properties where an adult cabaret could locate. Although the evidence on this issue was not fully developed, it appeared that there remained about 10 currently available sites in Valley View where an adult cabaret could locate, plus possibly other sites that were viable but not currently commercially available. As such, it appeared, on the evidence so far presented, that there existed a reasonable number of alternative locations where Fifth Column could locate an adult cabaret and present semi-nude dancers. The Court added, however, that the earlier version of Valley View's Adult Use Ordinance appeared *not* to leave open a

reasonable number of alternative avenues of communication, so that Valley View's amendment of the Adult Use Ordinance had been a very important factor in the Court's determination.

5. Regarding Fifth Column's argument that the Adult Use Ordinance was unconstitutional because it was aimed specifically at curbing Fifth Column's speech, and did not further a vital governmental interest by the least restrictive means, the Court noted that neither party presented much evidence regarding Valley View's goals in enacting the original or amended Adult Use Ordinances. The Court concluded, however, that on the evidence adduced on that point, Fifth Column had not shown a substantial likelihood of success on the merits of its claim that curbing the asserted secondary effects of adult businesses was not Valley View's true objective in passing the amended Adult Use Ordinance, but rather a pretext to specifically target Fifth Column's free speech rights.[8] Essentially, the Court noted that, while the evidence adduced on this point did lend some credence to Fifth Column's contentions, this evidence was insufficient to meet the heavy burden imposed upon Fifth Column at that stage of the proceedings. The Court further noted that this determination was the one it believed was most susceptible to change at trial, given the evidence of questionable motive already in the admittedly incomplete record.

In the end, the Court declined to extend its earlier TRO because: (1) Fifth Column had not shown a strong likelihood of success on the merits of its claim that Valley View's amended Adult Use Ordinance was unconstitutional; and (2) Valley View had a legitimate interest in enforcing its building code, so Valley View had a right to close Cleveland PM at least until Fifth Column obtained a Valley View occupancy

**8.** That is, the Court concluded that: (1) the test that the Adult Use Ordinance needed to pass was the less strict, four-part test for content-neutral statutes, as enunciated in *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), and

not the more stringent test applied to content-based statutes, as discussed in *Elrod v. Burns*, 427 U.S. 347, 361, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); and (2) the Adult Use Ordinance did, in fact, pass the *O'Brien* test.

certificate. Following its ruling, the Court set a preliminary injunction hearing, to be combined with a trial on the merits, for July 15, 1998. The Court also directed the parties to attempt to resolve before trial any building code/occupancy certificate issues unrelated to location or zoning (e.g., carbon monoxide detectors), so that the only issues remaining for trial would bear on the constitutionality of the Adult Use Ordinance.

About 10 days before the scheduled trial, counsel for the parties jointly called the Court to discuss their progress. The parties agreed that they had, in fact, resolved all building code/occupancy certificate issues, so that the only issues remaining for trial related to the constitutionality of the Adult Use Ordinance; Valley View conceded that, except for Cleveland PM's failure to meet the requirements of the Adult Use Ordinance, it was eligible for an occupancy certificate.[9]

The parties then raised a new area of concern. The parties explained that, during the course of trial preparation, they had come upon what they believed was a purely legal question that could potentially dispose of the entire case and make a trial unnecessary. Specifically, Fifth Column stated it believed that Valley View's amended Adult Use Ordinance, § 1268.03 (June 15, 1998), was invalid because Valley View's enactment of the ordinance was procedurally defective. Valley View disagreed that the amended Adult Use Ordinance was invalid, but concurred that a trial was almost certainly unnecessary if Fifth Column was correct. Accordingly, the Court and the parties agreed that: (1) the Court would postpone the trial; (2) the

parties would brief the discrete legal issue of whether the amended Adult Use Ordinance was valid; and (3) on July 15, 1998, the Court would meet with the parties to address any remaining questions on this single issue. Having received the briefs and heard oral argument from the parties, the Court now turns to the issue of the validity of the Adult Use Ordinance.

## II. Enactment of the Ordinance.

When Valley View enacted the initial version of § 1268.03 on January 3, 1995, it passed the ordinance as "emergency legislation." Specifically, Valley View passed Ordinance 95-1-6, which: (1) added § 1268.03 to the Valley View code; and (2) declared that the Ordinance was "an emergency measure necessary for the immediate preservation of the public peace, health and welfare of the inhabitants of the Village of Valley View, therefore, this Ordinance shall take effect and be in force immediately from and after its passage and approval by the Mayor." When Valley View enacted the amended version of § 1268.03 on June 15, 1998, it again passed the ordinance as an "emergency measure," with similar language. It is undisputed that Valley View did not submit the two ordinances to its Planning Commission for consideration, and did not hold any public hearings on the issues raised by the ordinances.[10]

### A. Ohio Statutory Requirements.

■ Fifth Column asserts that the procedures Valley View followed when it enacted the original and amended Adult Use Ordinances violated Ohio law.[11] Fifth Col-

---

9. Valley View states that, on June 26, 1998, the Valley View Building Commissioner issued a Certificate of Occupancy to ... 'Cleveland PM,' to occupy the building at 7503 Granger Road. The certificate specified that the uses of the building could not include an adult entertainment business, pursuant to Section 1268.02 of Valley View's Codified Ordinances. Valley' View's Validity Brief at 4.

10. It is also undisputed that Valley View is an unchartered municipal corporation, and it does have a Planning Commission that meets regularly.

11. Fifth Column also asserted that the procedures Valley View followed when it enacted the amended Adult Use Ordinances violated *Valley View* law. Because the Court agrees with Fifth Column that the procedures Valley View followed violate Ohio law, it addresses

umn contends that Ohio law forbids Valley View from enacting § 1268.03 as an emergency measure, and that therefore the Ordinance is invalid and of no effect. Fifth Column bases its argument on Ohio Rev. Code §§ 713.10 and 713.12, which mandate certain procedures that unchartered municipal corporations must follow when passing certain types of ordinances. It is clear that, as an unchartered municipal corporation, Valley View must follow the provisions of Ohio Rev.Code §§ 713.10 and 713.12. *Village of Wintersville v. Argo Sales Co., Inc.,* 35 Ohio St.2d 148, 299 N.E.2d 269 syllabus ¶ 2 (Ohio 1973) ("[a] noncharter village is subject to the statutory enactments with respect to the procedure to be followed in the adoption of zoning ordinances, and it is mandatory that the provisions of R.C. 713.12 be followed, which provisions necessitate a public hearing, preceded by a 30–day notice of the time and place of such public hearing"). The question thus becomes, in this case, whether the initial and amended Adult Use Ordinances passed by Valley View are subject to the requirements set out in Ohio Revised Code sections 713.10 and 713.12.

Section 713.10 states:

The districting or zoning of any municipal corporation or part thereof may be based upon any combination of two or more of the purposes described in sections 713.07 to 713.09, inclusive, of the Revised Code. In the determination and establishment of such districts buildings and other structures may be classified on the basis of the nature or character of trade, industry, profession, or other activity conducted or to be conducted therein, the number of persons, families, or other group units to reside in or use them, the public, quasi-public, or private nature of the use thereof, or upon any other basis relevant to the promotion of the public safety, health, morals, convenience, prosperity, or welfare.

*The legislative authority of such municipal corporation may amend or change the number, shape, area, or regulations of or within any district, but no such amendment or change shall become effective unless the ordinance proposing it is first submitted to the planning commission, board, or officer for approval, disapproval, or suggestions and the commission, board, or officer is allowed a reasonable time, not less than thirty days, for consideration and report.*

Ohio Rev.Code § 713.10 (emphasis added). Section 713.12 adds:

Before any ordinance, measure, regulation, or amendments thereto, authorized by sections 713.07 to 713.11, inclusive, of the Revised Code, may be passed *the legislative authority of the municipal corporation shall hold a public hearing thereon, and shall give at least thirty days' notice of the time and place thereof* in a newspaper of general circulation in the municipal corporation.... During such thirty days the text or copy of the text of such ordinance, measure, or regulation, together with the maps or plans, or copies thereof, forming part of or referred to in such ordinance, measure, or regulation and the maps, plans, and reports submitted by the planning commission, board, or officer shall be on file, for public examination, in the office of the clerk of the legislative authority or in such other office as is designated by the legislative authority....

Ohio Rev.Code § 713.12 (emphasis added).

Together, these two ordinances require that, before an amendment to a "districting or zoning" ordinance can become effective, an unchartered municipality must: (1) submit the ordinance to the municipality's Planning Commission for approval, disapproval, or suggestions; and (2) hold a public hearing on the ordinance, after giving 30 days notice. It is undisputed that Valley View did not make any efforts to meet these requirements. Therefore, if amend-

this latter argument in lesser detail in section II.F, below.

ed Ordinance § 1268.03 is a "districting or zoning" ordinance regulated under § 713.01, it is invalid and Valley View cannot enforce it against Fifth Column, or anyone else. On the other hand, if amended Ordinance § 1268.03 is necessary for preservation of the public health, safety, or welfare and is not a "districting or zoning" ordinance, it is valid: as set out in Ohio Rev.Code § 731.30, "emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect."

### B. Valley View's Arguments.

Not surprisingly, Valley View contends that § 1268.03 is not a "districting or zoning" ordinance, but instead is a "nuisance abatement" ordinance designed to limit the "secondary effects" associated with adult cabarets, and thus that the Adult Use Ordinance is necessary for the immediate preservation of the public health, safety and welfare.[12] To support its position, Valley View points to the language of the Ohio statute itself: § 713.10 states that "[t]he legislative authority of [a] municipal corporation may amend or change the number, shape, area, or regulations *of or within any district*" only after submitting the proposed ordinance to the planning commission. Valley View argues that the Adult Use Ordinance does not change any regulations "of or within any district." Rather, Valley View argues, the Adult Use Ordinance imposes certain non-zoning distance requirements on adult cabarets, regardless of what kind of zoning district the adult cabaret is in. Essentially, Valley View draws a distinction between (a) "zoning and districting ordinances" and (b) "locational, non-zoning ordinances," and argues that Ohio Rev.Code §§ 713.10 and

713.12 apply only to the former, while its Ordinance § 1268.03 is the latter.[13]

Specifically, Valley View notes that its zoning code provides for five types of zoning districts: (1) country home districts, (2) business districts, (3) office building, research laboratory, and light manufacturing districts, (4) industrial districts, and (5) special use districts. Valley View Ordinances §§ 1248–56. Only certain permitted uses are allowed in each of these five districts. *E.g.*, § 1248.02 (permitting only certain uses in country home districts). Valley View notes that the Adult Use Ordinance does not change the number of zoning districts, or their size or shape or area, nor does it change the permitted uses within any *individual* district; rather, the Adult Use Ordinance sets out certain locational restrictions that apply across *every* type of zoning district. Valley View thus concludes that the Adult Use Ordinance does not change any regulations "of or within any [single] district."

As additional support for its argument, Valley View notes that "[z]oning ordinances have reference to the use of land, not ... the persons who own land." 10 Ohio Jur.3d *Buildings, Zoning, and Land Controls* § 84 at 284 (1995); *see Cash v. Brookshire United Methodist Church*, 61 Ohio App.3d 576, 573 N.E.2d 692, 695 (1988) ("[z]oning ordinances have reference to the use of land rather than who owns the land"). Valley View notes that the Adult Use Ordinance does not provide that "no *land or building* shall be used as an adult entertainment business" unless it meets the locational requirements; rather, the Ordinance states that "[n]o *person* shall cause or permit the establishment of an adult entertainment business" unless it

---

**12.** Ohio Rev.Code § 715.53 provides that a municipal corporation may regulate taverns and other houses for public entertainment to prevent them from becoming a public nuisance. This statute, however, does not limit the effect of §§ 713.10 and 713.12, so that, if a municipal corporation regulates an adult cabaret *by use of a zoning ordinance* to pre-

vent the cabaret from becoming a public nuisance, the other statutory requirements must still be met.

**13.** Valley View also refers to the latter type of ordinance as a nondistrict-based distancing regulation. Validity Brief at 20.

meets the locational requirements. Valley view asserts that, because the ordinance applies to persons, not land or buildings, it is not a "districting or zoning" ordinance covered by Ohio Rev.Code §§ 713.10 and 713.12.

Although Valley View argues adroitly, the Court finds that its position is not persuasive, for several reasons. First, Valley View has repeatedly characterized its Adult Use Ordinance as a zoning ordinance, both formally and informally. At the TRO hearing, for example, counsel for Valley View informally referred to § 1268.03 as part of its zoning code. *See* footnote 2, *supra.*[14] More formally, Valley View included its Adult Use Ordinance within Part Twelve, Title Four of the Codified Ordinances of Valley View. Part Twelve is titled "Planning and Zoning Code," and Title Four is titled "Zoning." It is true that Valley View's "[c]ode, title, chapter and section headings do not constitute any part of the law as contained in the Codified Ordinances," § 202.01, but *the body of Ordinance § 1240.26 itself* refers broadly to "Title Four of Part Twelve," which contains the Adult Use Ordinance, as "the Planning and Zoning Code."[15]

Beyond Valley View's characterization of its own ordinance, the function of the Adult Use Ordinance is clearly that of a zoning law. Ironically, this fact is most clearly revealed by Valley View's own use of a Village map as an exhibit at the Court's June 15 and July 15, 1998 hearings. With this map, Valley View showed where an adult entertainment business could locate within the Village, pursuant to the locational parameters set out in § 1268.03, by indicating restricted and non-restricted *zones* of property. Simply, the Adult Use Ordinance has the actual

and intended effect of limiting how a piece of property may be used, depending on its location. This is the essence of a zoning law. *See Renton,* 475 U.S. at 54, 106 S.Ct. 925 ("to make some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas ... is the essence of zoning"). That the Adult Use Ordinance achieves this result by using the active voice to limit what a person may do, rather than using the passive voice to limit how a building may be used (by a person, of course), is, at least in the context of this case, of no moment. A zoning ordinance "deprive[s] a property owner of uses of his land to which he would otherwise be entitled." *University Circle, Inc. v. City of Cleveland,* 56 Ohio St.2d 180, 383 N.E.2d 139, 141 (1978). This is precisely what the Adult Use Ordinance seeks to achieve.

Turning to Valley View's argument that it is entitled to pass emergency legislation regulating the public health, safety, and welfare, pursuant to its police power, this is generally true. For example, Valley View could enact emergency legislation regulating the conduct that may occur inside an adult cabaret. *Cf. Threesome Entertainment v. Strittmather,* 4 F.Supp.2d 710 (N.D.Ohio 1998) (O'Malley, J.) (upholding, in part, the constitutionality of a City of Vermilion ordinance prohibiting, inter alia, topless dancers from performing within six feet of customers). But the fact that the Village is allowed to exercise its police power to protect the public health, safety, and welfare does not end the inquiry. "The police power in effect sums up the whole power of government. All other powers are only incidental and ancillary to

**14.** Indeed, while not determinative, it is not insignificant that the Court and *both* parties have referred to the Adult Use Ordinance as a zoning restriction at every stage of the proceedings before this one.

**15.** Moreover, in § 1240.01, Valley View defines its zoning code, including the entirety of

Title Four, as a plan for dividing the Village into districts, including limitations and regulations of the ... uses of buildings ... in such districts. The Adult Use Ordinance meets this description, as it regulates the use of buildings within the various zoning districts.

the execution of the police power." *Wessell v. Timberlake*, 95 Ohio St. 21, 116 N.E. 43, 46 (1916) (quoting *Sligh v. Kirkwood*, 237 U.S. 52, 58, 35 S.Ct. 501, 59 L.Ed. 835 (1915)). Thus, the Village's police power *includes* the power to regulate land use through zoning and districting ordinances.[16] The State of Ohio, however, has placed certain restrictions on the exercise of this portion of the police power by unchartered municipal corporations. That Valley View *generally* has the power to enact ordinances on an emergency basis to protect the public welfare does not mean that it has the power *specifically* to enact "districting or zoning" ordinances on an emergency basis to protect the public welfare. The State of Ohio General Assembly, with Ohio Rev.Code §§ 713.10 and 713.12, has decreed it does not.[17]

Finally, case law precedent runs strongly against Valley View's position. In *City of Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), the City of Renton, Washington passed an "ordinance prohibit[ing] any 'adult motion picture theater' from locating within 1,000 feet of any residential zone, single- or multiple-family dwelling, church, or park, and within one mile of any school." *Id.* at 44, 106 S.Ct. 925. The Supreme Court referred to this as a "zoning ordinance." *Id.* at 50, 106 S.Ct. 925. Similarly, in *Young v. American Mini Theatres*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the City of Detroit passed an ordinance providing "that an adult theater may not (apart from a special waiver) be located within 1,000 feet of any two other 'regulated uses' or within 500 feet of a residential area." *Id.* at 50, 96 S.Ct. 2440. Again, the Supreme Court saw this clearly as a "zoning ordinance," as did the City of Detroit, itself. Indeed, Judge Dowd of this Court recently concluded that whether an ordinance containing the type of locational restrictions found in Valley View's Adult Use Ordinance is contained in the municipality's zoning code or general business code is immaterial. Specifically, Judge Dowd held that, even though a Northfield Village ordinance, which stated that an adult bookstore could not locate "within 500 feet of a Residential District or within 500 feet of a residential property line," was contained in the Village's "Business Regulation and Tax Code" and not its "Planning and Zoning Code," the ordinance was "clearly a zoning ordinance," to which Ohio Rev.Code § 713 would apply if Northfield was an unchartered municipal corporation. *See 10280 Northfield Rd., L.L.C. v. Village of Northfield*, no. 97–CV–1101, slip op. at 6, 24 (Sept. 26, 1997 N.D. Ohio) (Dowd, J.).

These cases strongly suggest that the locational restrictions contained in § 1268.03 make it a "districting or zoning" ordinance governed by §§ 713.10 and 713.12. Simply, Valley View's Adult Use Ordinance amends or changes the uses to which a property in any given zoning district may be put; thus, it is governed by §§ 713.10 and 713.12.[18]

---

**16.** Valley View recognizes this in its own Ordinance § 1240.01, where it notes that the Purpose of [its] Zoning Code is to promote the public health, safety, convenience, comfort, prosperity, and general welfare.

**17.** Similarly, that the State of Ohio *itself* uses locational restrictions to limit where certain uses may situate e.g., Ohio Rev.Code § 4303.26(A) (prohibiting liquor stores from locating within 500 feet of churches, schools, and so on) does not mean that Valley View may do so without meeting the State's statutory requirements.

**18.** Contrary to Valley View's suggestion, the locational parameters set out in § 1268.03 would be zoning restrictions whether they apply to adult cabarets, swimming pools, or any other use of a property. Also contrary to Valley View's suggestion, §§ 713.10 and 713.12 do not require the Village to resubmit its Adult Use Ordinance for re-enactment every time a new church opens in the Village, thereby changing the areas in the Village where an adult cabaret could locate. First, such a change does not reflect an amendment to a zoning ordinance by legislative authority, § 713.10. Second, this effect would doubtless be considered during the initial public hearing and consideration by a planning commission, which is all that the Ohio statute requires.

*C. Valley View's Additional Arguments on Reply.*

In both its reply brief and its oral responses to this Court's inquiries at the July 15, 1998 hearing, Valley View attempted to dodge many of the points the Court relies upon above, by redefining the terms of its argument. Hoping to skirt the implications of the language in *Renton, American Mini Theatres,* and Judge Dowd's opinion in *Village of Northfield,* Valley View retreated from the distinction drawn in its initial brief between "districting or zoning ordinances" and "locational, non-zoning ordinances" and relied, instead, on a distinction between "districting-type zoning activity" and "non-districting zoning activity." In so doing, Valley View backed off its original contention that the Adult Use Ordinance is "not [a] zoning law," *see* Valley View's Validity brief at 20, and conceded that § 1268.03 is generically a zoning ordinance. In the Village's view, however, § 1268.03 is not the kind of zoning ordinance governed by Ohio Rev.Code §§ 713.10 and 713.12. Valley View now contends that these statutes and the other Ohio Revised Code sections to which they refer, only address a finite subset of zoning ordinances—which does not include the Adult Use Ordinance at issue here.

While Valley View's recasting of its argument, with finer and finer distinctions, may avoid certain of the more obvious rejoinders to its initial contention, Valley View's modified position remains unpersuasive. First, it requires the Court to rewrite the Ohio statutory sections at issue. Section 713.10—and § 713.12, by reference—does not govern only districting-type zoning regulations as opposed to other types, nor does it refer solely to "districting" regulations—it refers to regulations governing "districting *or* zoning," explicitly encompassing more than just the "districting" activity on which Valley View now focuses.

Second, a review of the statutory scheme which encompasses §§ 713.10 and 713.12 mandates rejection of Valley View's latest distinction. The obvious purpose of the entire statutory scheme is to assure that governing bodies in unchartered municipalities refrain from dictating the uses to which private property may be put in the absence of due consideration and notice to the effected property owners and residents. Valley View's narrow reading of the statutory scheme would require this Court to attribute to the Ohio General Assembly an essentially illogical purpose—that is, to protect property owners in unchartered municipalities by assuring there is due deliberation and an opportunity for discussion when the municipality *amends* existing, authorized uses in existing districts, but to afford no such protections when the municipality first creates the districts and permitted uses themselves, or first passes an ordinance outlawing property uses across multiple districts. The validity of Valley View's interpretation of this statutory scheme depends on its contention that Ordinance § 1268.03 (June 15, 1998) did not "amend or change the number, shape, area, or regulations of or within any district." Ohio Rev.Code § 713.10. But this argument proves too much—under this view, if a municipal corporation had no zoning district ordinances or use regulation codes at all, it could then establish an extensive zoning code without public hearing or notice, because it is not "amending or changing" any district. This reading of § 713.10, in light of the entirety of the Ohio statutory code governing municipal corporations, is neither logical nor reasonable.

Finally, Valley View's distinctions, even if otherwise sensible, ultimately do not serve its own purposes in this case. As noted above, Ordinance § 1268.03 (June 15, 1998) *does* "change" the "regulations of or within" a number of existing districts. Ohio Rev.Code § 713.10. The Adult Use Ordinance outlaws a specific use of property in all existing districts, save one defined geographic segment of the Village. Because the location and size of the zone in which "adult uses" are authorized within

the Village changed by virtue of the Ordinance, the authorized uses in each zoning district affected by that change were necessarily altered as well. Thus, even accepting the propriety of Valley View's dissection of Ohio Rev.Code §§ 713.10 and 713.12, it is clear that those statutory provisions apply to the legislative activity at issue here.

### D. Abstention.

■ In one last attempt to avoid the force of Ohio Rev.Code §§ 713.10 and 713.12, Valley View argues that this Court should abstain from ruling on Fifth Column's motion for injunctive relief, based on the *Pullman* doctrine.[19] This doctrine holds that "when state court construction of an unclear state statute might narrow or eliminate a federal constitutional question, abstention may be justified under principles of comity in order to avoid 'needless friction with state policies.'" *Gannett Outdoor Co. of Michigan v. City of Pontiac*, 1994 WL 12652 at *2 (6th Cir. Jan. 19, 1994) (quoting *Railroad Com'n of Texas v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941)). The Sixth Circuit Court of Appeals has recently discussed this doctrine, commenting:

> In general, federal courts are bound to adjudicate all controversies that are properly before them. *E.g., New Orleans Pub. Serv. Inc. v. Council of New Orleans*, 491 U.S. 350, 358–59, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). However, there are exceptions. The Supreme Court has explained that "abstention is appropriate 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'" *Colorado River*

*Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959)). In *Pullman*, 312 U.S. at 501, 61 S.Ct. 643, the Supreme Court held that federal court abstention is justified where state court adjudication of an issue under state law would be determinative of related federal claims. In *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir.1983), this circuit established two requirements for *Pullman* abstention: [1] an unclear state law and [2] the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question.

*Slyman v. City of Willoughby*, 1998 WL 24990 at *2 (6th Cir. Jan. 16, 1998) (affirming in part this Court).

■ In this case, abstention is inappropriate because the Ohio statutes at issue in this case are not unclear. Valley View's position hinges completely on whether its Adult Use Ordinance is a "districting or zoning" regulation within the meaning of those statutes—if it is, Ohio Rev.Code §§ 713.10 and 713.12 apply, and Valley View concedes it did not follow the mandates of those statutes. The meaning of the phrase "districting or zoning ordinance," however, is "clear and unmistakable." *Chez Sez III Corp. v. Township of Union*, 945 F.2d 628, 630 (3rd Cir.1991), *cert. denied*, 503 U.S. 907, 112 S.Ct. 1265, 117 L.Ed.2d 493 (1992) (discussing the propriety of *Pullman* abstention in a zoning ordinance case). There is no likelihood that some reasonable construction of this phrase by a state court will narrow or eliminate the constitutional question presented by Fifth Column.[20]

---

19. The Supreme Court has suggested that it would be preferable to speak of *Pullman* 'deferral' rather than *Pullman* abstention, because a district court may stay proceedings rather than dismiss them, pending resolution of state law claims in state court. *Growe v. Emison*, 507 U.S. 25, 32 n. 1, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993).

20. Moreover, even if a state court ruling somehow narrowed or explained the Ohio statutes at issue, and even if this narrowing or explanation proved Valley View's enactment of the amended Adult Use Ordinance was procedurally correct, so that the Ordinance is valid, the Court would still be left with the

One example of when a federal court found a state zoning law to be "unclear" is where a state court order and a municipal zoning ordinance were in "square conflict," presenting "a novel and uncertain question of Ohio state law; i.e., whether the common pleas court exceeded its authority in entering the order." *Slyman*, 1998 WL 24990 at *2. Another example is where a township concluded that an adult bookstore's video booths were not a "theater use," as that term was used in the township's zoning ordinance, and no "state court [had] rule[d] in the first instance upon the proper interpretation of the Zoning Ordinance." *Chez Sez III*, 945 F.2d at 630. This case does not present any similar question. There are no state laws in conflict, and there is no ambiguous term contained in the Valley View ordinances, themselves, that is susceptible to different interpretations. Nor is there any ambiguous term contained in the applicable Ohio statutes—Valley View does not argue that the term "districting or zoning" ordinance is ambiguous, but instead only that Valley View's Adult Use Ordinance is not such a law.[21] Accordingly, the Court rules that abstention is not appropriate in this case.[22]

### E. Scope of the Injunction.

 In sum, the Court concludes that the amended version of § 1268.03 is a "districting or zoning" ordinance to which Ohio Rev.Code §§ 713.10 and 713.12 apply. Because Valley View admits that it did not comply with the requirements contained in these Ohio statutes when it passed § 1268.03 (June 15, 1998), the *amended* version of the Adult Use Ordinance is not valid and cannot be legally enforced. Fifth Column has shown a certainty of prevailing on the merits of its argument that the amended Valley View Adult Use Ordinances is invalid and of no effect, and that it will suffer irreparable harm absent the injunction. Thus, Fifth Column is entitled to a preliminary injunction enjoining Valley View from enforcing § 1268.03 (June 15, 1998).

This leaves the question of whether Fifth Column is also entitled to a preliminary injunction enjoining Valley View from enforcing the *original* version of the Adult Use Ordinance, § 1268.03 (Jan 3, 1995). The new version of the Adult Use Ordinance repealed the old version. Because the new Ordinance is invalid, the repeal of the old version of the Ordinance is also invalid, so the old version of the Adult Use Ordinance is revitalized. Even though Valley View also did not meet the statutory requirements of §§ 713.10 and 713.12 when it passed the old version of § 1268.03, the old version of the Adult Use Ordinance is not therefore invalid—Ohio Rev.Code § 713.121 sets out a two-year statute of limitations for "challenging the validity of a zoning ordinance or regulation or of any amendment to such an ordinance or regulation because of a procedural error in [its] adoption."

Valley View has admitted, however, that the old version of the Adult Use Ordinance will be "hard to defend" because it was probably too locationally restrictive under *Renton.* At the initial TRO hearing, when considering the original Adult Use Ordi-

question of whether the Adult Use Ordinance is constitutional.

**21.** To the extent Valley View *does* argue that the term districting or zoning ordinance is ambiguous, the Court concludes Valley View is simply wrong.

**22.** Valley View relies, in part, upon *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), in support of its abstention argument. That reliance is unavailing.

*Colorado River* permits a federal court to defer the exercise of its jurisdiction only when a *concurrent* state court proceeding is pending. *Gottfried v. Medical Planning Servs., Inc.*, 142 F.3d 326, 329 (6th Cir.1998) ( where, as here, there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for *Colorado River* abstention do not exist ). Valley View cites to no pending state court proceeding in which its unusual contentions in this case are or are likely to be asserted.

nance, this Court concluded that Fifth Column had shown a substantial likelihood of success on the merits and a certainty of irreparable harm absent the injunction. Valley View's concession that the original ordinance will be "hard to defend" only strengthens this conclusion. Accordingly, the Court concludes that Fifth Column is also entitled to a preliminary injunction enjoining Valley View from enforcing § 1268.03 (Jan. 3, 1995).[23]

### F. Valley View Statutory Requirements.

█ As noted in footnote 11 above, Fifth Column asserts that not only did Valley View violate *Ohio* statutory requirements when it enacted the amended version of § 1268.03, it also violated *Valley View's* own procedural requirements. This argument is largely moot, given the Court's conclusion regarding Valley View's violation of Ohio law. For the sake of completeness, however, the Court addresses this last argument, as well.

Fifth Column points to Valley View Ordinance § 1246.06, which states:

Council may from time to time and on its own motion or petition, after public notice and hearing, amend this Zoning Code. Every such proposed amendment shall be referred to the Planning Commission for its consideration and report thereon. Any such proposed amendment which violates, differs or departs from the plan or report submitted by the Planning Commission shall not be passed by Council except by three-fourths of the full membership of Council.

§ 1246.06 (May 2, 1978). Again, it is undisputed that Valley View did not provide public notice or conduct a hearing before amending its Zoning Code by enacting § 1268.03 (June 15, 1998), nor did it refer the proposed Ordinance to the Planning Commission.[24]

Valley View's own Ordinance § 1246.06 does not even suggest a distinction between (a) "zoning and districting ordinances" and (b) "locational, non-zoning ordinances," upon which Valley View attempted to rely to avoid the force of Ohio Rev.Code § 713.10 and 713.12. This lends support to the Court's conclusion that no such distinction exists in the law, because the Village itself did not draw one in its own Ordinances before this lawsuit arose. Moreover, even if such a distinction does exist in Ohio law, there is no reason, as Valley View argues, that

**23.** Valley View suggested that, if this matter proceeds to trial on the constitutionality of its original Adult Use Ordinance, § 1268.03 (Jan 3, 1995), it might argue that: (1) the Supreme Court's holding, in *Barnes v. Glen Theatre*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991), that performances by topless dancers contain an element of speech protected by the First Amendment, should be overturned, as suggested in Justice Scalia's concurring opinion, *id.* at 572–81, 111 S.Ct. 2456; *see also DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 409 (6th Cir.1997) (reading *Barnes* not to state that all similar activities are speech as a matter of law, but instead to leave open the possibility that on a different record, some activities may be not considered expressive at all ); and (2) as allegedly suggested in dicta in *Renton*, given that Valley View contains so much property located in residentially-zoned districts, the fact that there is little land available for adult uses does not make the original Adult Use Ordi-

nance unconstitutional. *But see 11126 Baltimore Blvd. v. Prince George's County, Md.*, 886 F.2d 1415, 1426 n. 7 (4th Cir.1989), *cert. granted and judgment vacated*, 496 U.S. 901, 110 S.Ct. 2580, 110 L.Ed.2d 261 (1990) (applying the *Renton* standard in a community zoned 90% residential). Both of these arguments are clearly uphill fights and not ones *this* Court would have the authority to accept, so the Court's conclusion that Fifth Column has shown a substantial likelihood of success on the merits must stand.

**24.** When Valley View's Clerk recorded the enactment of Ordinance 98–6–5, she certified that it was passed by Council on June 14, 1998 and approved by the Mayor on June 14, 1998 and that the same had been duly posted beginning June 15, 1998 for a period of fifteen (15) days as required by law. This statement appears nonsensical on its face, because the Council's vote cannot have occurred fifteen days after the day after it voted.

the distinction should be read into Ordinance § 1246.06. The local Ordinance is clear and does not conflict with Ohio Rev. Code §§ 713.10 or 713.12. The local Ordinance calls for public notice, public hearing, and submission to a planning commission before enacting *either* a "zoning and districting ordinance" *or* a "locational, non-zoning ordinance," while § 713.12 (under Valley View's theory) mandates these prerequisites only for the former type of ordinance. *Cf. Rispo Realty & Develop. Co. v. City of Parma*, 55 Ohio St.3d 101, 564 N.E.2d 425 (Ohio 1990) (an unchartered municipality cannot place additional burdens on the passage of a zoning ordinance that is clearly governed by § 713.12). Thus, on its own terms, Ordinance § 1246.06 applies to Valley View's attempt to amend its Adult Use Ordinance, as contained in its own Zoning Code.

Apparently sensing this, Valley View argues in the alternative that the enactment of § 1268.03 (June 15, 1998) itself worked to repeal § 1246.06. Valley View contends that to the extent the later-passed § 1268.03 conflicts with the earlier-passed § 1246.06, the later ordinance should be deemed to repeal by implication the earlier ordinance. This theory is creative, but completely illogical. First of all, repeal by implication is strongly disfavored in Ohio. *Bird & Son, Inc. v. Limbach*, 45 Ohio St.3d 76, 543 N.E.2d 1161, 1166–67 (1989). More importantly, under this theory, every time Valley View attempts to enact a law but violates its own procedural requirements for legislative enactment, its own long-standing procedural requirements must then be deemed repealed. This renders the procedural requirements a complete nullity—they are repealed by virtue of their violation.

In sum, Valley View did not follow the procedures set out in its own valid Ordinance § 1246.06 before amending §. 1268.03 on June 15, 1998. The Court thus concludes, for this additional reason, that Fifth Column is entitled to preliminary injunctive relief enjoining Valley View from enforcing § 1268.03 (June 15, 1998).

## IV.

Given that the Court has entered a preliminary injunction in favor of Fifth Column, the parties have several options. First, Valley View may take an immediate appeal. 28 U.S.C. § 1292(a)(1). Second, the parties may elect to proceed to a full trial on the merits; in this case, a trial would probably focus on the issue of whether the original Adult Use Ordinance is excessively locationally restrictive under *Renton*.[25] There are probably other options the parties can suggest as well. Accordingly, the Court directs the parties to indicate what procedure they wish to follow, within 10 calendar days of the date of this Order.

IT IS SO ORDERED.

---

**25.** As noted during the Court's July 15, 1998 meeting with the parties, while the motive for Valley View's passage of the amended Adult Use Ordinance may have been suspect, there is nothing in the record to suggest that the original Ordinance, passed more than a year before Cleveland PM changed hands, is anything other than a content-neutral attempt to address the secondary effects of adult entertainment businesses.